## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES R. UNDERWOOD, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-442-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff James R. Underwood, II (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 28, 1979 and was 31 years old at the time of the ALJ's decision. Claimant completed his education through the eighth grade. Claimant has worked in the past as a fast food worker, tobacco picker, mechanic work, and tire work. Claimant alleges an inability to work beginning March 15, 1999 due to limitations resulting from numbness in the legs, pain and dizziness.

**Procedural History**

On February 27, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 4, 2010, an administrative hearing was conducted before ALJ Trace Baldwin in McAlester, Oklahoma. At the hearing, Claimant withdrew his claim for disability insurance benefits, choosing to proceed only on the claim for SSI. On March 3, 2011, the ALJ issued an unfavorable decision. On August 22, 2012, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) improperly using the Grids to direct a determination of non-disability; (2)

failing to properly evaluate the medical evidence from a treating source; and (3) failing to perform a proper credibility analysis.

## Application of the Grids

In his decision, the ALJ found Claimant suffered from the severe impairments of hypertension, obesity, and diabetes mellitus. (Tr. 11). The ALJ determined Claimant retained the RFC to perform sedentary work by occasionally lifting/carrying at least 10 pounds, frequently lifting/carrying at least 10 pounds, standing and/or walking at least 2 hours in an 8 hour workday, and sitting for at least 6 hours in an 8 hour workday. (Tr. 15). The ALJ then applied the Medical-Vocational Guidelines (the "Grids") to find Claimant not disabled. (Tr. 22).

Claimant first contends the ALJ improperly applied the Grids. Specifically, Claimant asserts the ALJ failed to include certain non-exertional limitations in his RFC evaluation which would have precluded the use of the Grids to direct a determination of non-disability.

In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." *See* 20 C.F.R. § 404.1567; 20

C.F.R. Pt. 404, Subpt. P, App. 2; Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled. Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Furthermore, "the mere presence of a nonexertional

6

impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength. 20 C.F.R. § 404.1569a(a). Examples cited include "(1) difficulty functioning because you are nervous, anxious, or depressed; (2) difficulty with maintaining attention or concentration; (3) difficulty understanding or remembering detailed instructions; (4) difficulty seeing or hearing; (5) difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; (6) difficulty with manipulative or postural functions such as reaching, handling, stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c).

In a litany of underdeveloped references to conditions in the record, Claimant asserts various non-exertional impairments. Claimant identifies borderline intellectual functioning, obesity, hypertension, mid-back, lumbar and cervical spine pain, right knee pain, and medicine side effects. In another area of the brief, Claimant continues with the list - chest pain (followed by

7

references to 23 pages of the record), headaches (followed by 7 pages of the record), neck pain (followed by references to 3 pages of the record), shoulder pain (followed by references to 3 pages of the record), knee pain (followed by references to 7 pages of the record), mid and low back pain (followed by references to 7 pages of the record, cervical radiculopathy or radiculitis (followed by references to 6 pages of the record), fatigue, dizziness, lightheadedness, and black outs with falls, shortness of breath, and mental limitations. Presumably relying upon the shear number of references to the various conditions he has asserted at one time or another, Claimant concludes that "[s]urely there is some erosion of the sedentary base of jobs available due to these conditions." Claimant has failed to demonstrate that any of these conditions constituted a significant limitation. Claimant has done little more than show the existence at various points in time of these conditions, largely based upon Claimant' subjective complaints. This represents an insufficient showing to establish a non-exertional impairment. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). The ALJ did not err in the application of the Grids to arrive at a finding of non-disability.

**Treating Source Evidence**

The medical record indicates Claimant was treated for some

period of time at the Family Clinic of Weleetka arising from various complaints. (Tr. 306-15). On March 2, 2009, Dr. Brent Davis and Physician's Assistant Jan Parker authored a "to whom it may concern" letter. The letter states Claimant suffers from severe hypertension which is not controlled on several medications. It goes further to state that Claimant experiences chest pain, "which is being worked up at this time." The letter concludes that "[d]ue to these 2 issues, he is not able to work at this time." (Tr. 312).

In his decision, the ALJ attributed little weight to the opinion, concluding it was not fully supported by or was not consistent with the medical evidence of record as a whole. (Tr. 19-20). The ALJ references Ms. Parker's treatment records from April 23, 2009 and May 21, 2009 wherein she determined Claimant's hypertension was showing improved control. (Tr. 20, 315). The ALJ also noted the lack of medical evidence showing treatment from a cardiologist to support his conclusion that the opinion of Dr. Davis and Ms. Parker concerning chest pain was entitled to reduced weight. (Tr. 20). Additionally, the ALJ discussed the consultative cardiology examination to support the conclusion that Claimant's performance on the treadmill resulted from poor exercise tolerance. Id. The ALJ also referenced the additional treatment notes from Ms. Parker which showed Claimant had reported being engaged in work activity or other strenuous activity. Id. Claimant's only response

9

to these references is to argue that the reports were signed by someone other than Ms. Parker. Nevertheless, this record constitutes a treatment note upon which the ALJ may rely.

Claimant also contends the ALJ should have recontacted Dr. Davis and Ms. Parker for updated opinions if he found inconsistencies in the records. However, the ALJ merely found inconsistency in the records and the opinion contained in the "to whom it may concern" letter. An ALJ is not required to recontact a source whose opinion is in conflict with his own treatment records or other medical evidence contained in the record. Claimant's citation to McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) is inappropriate to the issue at hand. In McGoffin, the court found the ALJ should have recontacted a treating physician when he questioned whether the physician actually authored the report. The ALJ did not question whether the source of the opinion and treatment records in this case. The ALJ did not err in his evaluation of Dr. Davis' and Ms. Parker's opinion.

## Credibility Analysis

The ALJ referenced in his opinion the various bases for rejecting Claimant's subjective claims. Primarily, the ALJ relied upon the absence of records showing loss of weight, muscular atrophy, the use of assistive devices, prolonged bed rest, or

adverse neurological signs. (Tr. 21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by

merely making conclusory findings and must give reasons for the determination based upon specific evidence.  Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ properly considered the lack of objective medical evidence to support Claimant's subjective assertions of limitation.  No error is attributed to his assessment.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 20th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE